**Richmond**

BABATUNDE KEHINDE

v.

COMMONWEALTH OF VIRGINIA

No. 0047-84

Argued October 17, 1985

Decided January 7, 1986

COUNSEL

Sterling H. Moore, for appellant.

Margaret Poles Spencer, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—Babatunde Kehinde was found guilty of rape and sentenced, in accordance with the jury's verdict, to five years in the penitentiary. The issues on appeal are (1) whether the evidence was sufficient to support the conviction and (2) whether the court erred in allowing the eleven year old victim to use a doll for the purpose of demonstrating where on her body the alleged penetration took place.

I.

The victim lived with her mother and half-sister at Kehinde's home from September, 1983 through January, 1984. The victim testified that one evening in late January, 1984, while her mother was at work, Kehinde came into the bedroom where she and her half-sister were sleeping. According to the victim, Kehinde put his hand on her chest. She tried to push him away; however Kehinde took the victim's housecoat off and pulled her pants down. The victim stated that Kehinde then "put his thing in me." She further testified that after Kehinde touched her chest, "[H]e kept on

doing to me and he kept on putting his hand on my chest." When asked what Kehinde did to her she replied, "[H]e stuck it in me," and related that by "it" she meant his penis.

The Assistant Commonwealth Attorney asked the victim where, on her body, Kehinde had put his penis. She replied, "[D]own, way down in there . . . I call it my stuff." In an attempt to clarify the victim's meaning of "stuff," the Commonwealth was allowed, over defense counsel's objection, to give the victim a doll and have her point to the area of the doll's body where she meant. After she had done so, the Commonwealth stated for the record that the victim had pointed to the vaginal area of the doll. Defense counsel objected to this characterization. The court made no ruling on the objection, stating only that the matter could be covered on cross-examination.

In a motion to set aside the verdict, made immediately after the jury was discharged, defense counsel stated that the victim had pointed to the doll's right leg. The motion was denied, without the court expressing an opinion as to where the victim had pointed. At the sentencing hearing, however, the court observed:

When the jury was excused, you (defense counsel) made a statement that the court did not agree with and to the effect that your contention was that the victim was pointing to her thigh at the time that she was gesturing before the jury. I didn't want the record to show silence as agreement on the part of the court. (parenthetical added).

After the incident in the bedroom, the victim used the bathroom and said that "it burned." She also saw "something that looked like cream." There was conflicting testimony from the victim about when she first reported what Kehinde had done and when she first told her mother. She said that she told a friend about it a few days afterwards; however, she also said that she first told the friend after she and her mother had moved from Kehinde's home. This move took place during the first week of February, 1984. The victim believed that she told her mother about the incident before they moved and that the move occurred because of what Kehinde had done to her. This was contradicted by the victim's mother who testified that the victim did not report the incident to her until February 11, 1984, after their move. The

victim also testified that she did not tell her mother at first because she was afraid of Kehinde. It appears, however, from her testimony that she voluntarily chose to stay alone with him on the day following this incident while her mother and sister went out. She stated that on this occasion Kehinde pulled her down on a couch and "did the same thing he did before."

Sometime in mid-February, the victim began complaining to her mother about being sore "in her privates." As a result, the victim was taken to a doctor. Weekly visits to the doctor continued through mid-April when the victim was admitted into a hospital for these complaints. No medical testimony was presented at trial.

The victim's mother reported her daughter's story to the police and to the local child protective services agency. She also testified she called Kehinde and told him that she had learned what he had done. Kehinde took the stand in his own behalf and denied having raped the victim. He also denied that the victim's mother ever spoke to him about the alleged rape.

## II.

Kehinde argues that the testimony of the victim, with or without the doll, was insufficient to establish penetration. In addition, he argues that the court erred in allowing the victim to use a doll to demonstrate where penetration, if any, had occurred.

In considering Kehinde's arguments, we view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth. *Dukes* v. *Commonwealth*, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984). In addition, we apply the well-defined legal principles relevant to rape cases. One essential element of rape is penetration, however slight, of a vagina by a penis. *Elam* v. *Commonwealth*, 229 Va. 113, 115, 326 S.E.2d 685, 686 (1985). This element, as with any other, may be established solely by the testimony of the victim unless such testimony is inherently incredible or so contrary to human experience or usual human behavior as to render it unworthy of belief. *Snyder* v. *Commonwealth*, 220 Va. 792, 796, 263 S.E.2d 55, 57-58 (1980).

In the present case, there were certain inconsistencies in the victim's testimony and some of what she said was contradicted by her mother. These inconsistencies, however, were "not so material or so unusual that her version of the events on the night in question was rendered unbelievable as a matter of law." *Id.* at 796, 263 S.E.2d at 58; *cf. Fisher v. Commonwealth*, 228 Va. 296, 300, 321 S.E.2d 202, 204 (1984).

On the issue of penetration, the victim stated, "[H]e stuck it *in* me." (emphasis added). She further explained that "it" meant "penis." We believe that this testimony is sufficient to establish penetration. The remaining question is whether the victim's testimony adequately informed the jury *where* the penetration occurred. Initially, she stated that it occurred "way down in there . . . I call it my stuff." She was then allowed to point to a doll. Kehinde maintains that this was inherently improper. We disagree.

■ Use of demonstrative evidence is a matter within the discretion of the trial court, and the decision in this regard will not be disturbed on appeal unless there has been an abuse of discretion. *Barber v. Commonwealth*, 206 Va. 241, 252, 142 S.E.2d 484, 493 (1965); *Peoples v. Commonwealth*, 147 Va. 692, 705, 137 S.E. 603, 607 (1927).

In the present case, an eleven year old girl was attempting to describe, with difficulty, where the defendant had put his penis "in" her. It cannot be expected that children will know enough to use the word "vagina," nor is such specificity required. It is enough if the trier of fact can reasonably infer from the evidence adduced where the penetration took place.[1]

■ In order to aid the witness in explaining her testimony, the court allowed use of a doll. Though there are no Virginia cases on this subject, use of dolls for such a purpose has been approved in other jurisdictions. *State v. Eggert*, 358 N.W.2d 156, 161 (Minn. App. 1984); *Newton v. State*, 456 N.E.2d 736, 741 (Ind. App. 1983); *State v. Lee*, 9 Ohio App. 3d 282, 284, 459 N.E.2d 910, 912 (1983). The court's comments in *Lee* are particularly relevant

---

[1] *Cf. Elam*, 229 Va. at 115, 326 S.E.2d at 686, where the court found that given the compelling medical and forensic evidence adduced by the Commonwealth, the jury could rationally discount the prosecutrix's uncertainty whether penetration occurred.

to the present case. There it was stated:

> The trial court found that the young witness was aided by the models she used. The record indicates that the witness was unable to relate to the jury the events using the appropriate sexual or physiological terminology. The dolls were used to clarify the witness' explanation and to insure a common understanding between the witness and jury as to the events which took place.

9 Ohio App. 3d at 284, 459 N.E.2d at 912.

We agree with the authorities cited that use of dolls under these circumstances is entirely appropriate and find no abuse of discretion in the trial court's ruling here. We note, however, that the scope of our decision is defined by counsel's objection at trial. The objection was to the use of "any kind of doll," because "whatever happened didn't happen to a doll, but it happened to her." No objection was made to the nature of the doll used. It is of some concern that the record does not disclose whether the doll was anatomically correct. Since counsel's objection, however, went to the use of dolls in general rather than to the nature of the specific doll used, we do not consider that issue at this time. *See Newton* v. *State*, 456 N.E.2d at 741.

One final issue regarding the doll must be addressed. Kehinde argues that once presented with the doll, the victim pointed to the leg of the doll, not the vagina. The Assistant Commonwealth Attorney noted for the record that the victim had pointed to the vagina. The jury saw where the victim pointed and was able to judge for itself whether she pointed to the vagina or the leg. Counsel was able to argue his interpretation of where the victim had pointed. Under these circumstances, the meaning of the victim's gestures with the doll was a factual matter to be resolved by the jury. We cannot say that the record fails to support an inference that the victim pointed towards the vaginal area of the doll, rather than the leg.

Penetration can be established by circumstantial, as well as direct evidence. *McCall* v. *Commonwealth*, 192 Va. 422, 426, 65 S.E.2d 540, 542 (1951). Further, in rape cases, hearsay testimony of the victim is allowed as corroboration. *Cartera* v. *Commonwealth*, 219 Va. 516, 518, 248 S.E.2d 784, 786 (1978). Here, in

addition to the direct testimony of penetration, the victim reported certain circumstantial facts which support a finding of penetration. When she used the bathroom immediately after the incident, she felt a "burning" and she also saw something that "looked like cream." She reported the incident along with a soreness "in her privates" to her mother within a few weeks of when it had happened. Therefore, viewing all the evidence in the light most favorable to the Commonwealth, we find that the element of penetration was sufficiently shown.

In summary, we find that the victim's testimony was not inherently incredible or otherwise unworthy of belief as a matter of law. We further find that the evidence was sufficient to show penetration of the victim's vagina by the defendant's penis. Finally, we find no abuse of discretion in the court's decision to allow use of a doll for demonstrative purposes. Accordingly, the conviction of rape is hereby affirmed.

*Affirmed.*

Koontz, C.J., and Benton, J. concurred.